# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-00260-CB |
| ) | CIVIL ACTION NO. 07-00807-CB |
| HASHIM SAYID MUHAMMAD ) | |
| ) | |
| Defendant/Petitioner. ) | |

## **OPINION and ORDER**

This matter is before the Court on a motion to vacate, set aside or correct sentence filed pursuant to 28 U.S.C. § 2255 by defendant/petitioner, Hashim Sayid Muhammad. (Doc. 75.) In support of his motion to vacate, Muhammad has filed a memorandum and affidavits. (Docs. 76 & 77.)[1] The government has filed a response to the motion, and Muhammad has filed a reply to the government's response. (Docs. 79 & 80.) For reasons stated below, the motion is denied.

**Factual and Procedural Background**

Hashim Sayid Muhammad (hereinafter "Muhammad" or "Petitioner") was charged in a one-count indictment and convicted by a jury of receiving and possessing a stolen firearm, which he knew or had reason to believe was stolen, in violation of 18 U.S.C. § 922(j). The stolen firearm was found in Petitioner's residence during a search pursuant to a search warrant. The search warrant was based on a lengthy and detailed affidavit provided by Postal Inspector

---

[1]In relation to his § 2255 motion, Petitioner has also filed a motion to proceed in forma pauperis and for appointment of counsel. (Doc. 74.) Because there are no costs associated with filing a § 2255 motion, the motion to proceed in forma pauperis is **denied**. The motion for appointment of counsel is likewise **denied** because there is no right to representation in a collateral proceeding.

Russell Payne which provided probable cause that Muhammad had been involved in two robberies of a post office located in the Loop area of Mobile—one in January 2003 and the other in July 2003. Inspector Payne had information from a person arrested for the first robbery that Muhammad was also involved. A third party told Payne that Muhammad helped recruit him to cash a bait money order taken in the first robbery. Regarding the second robbery, Payne had verified through several sources that Muhammad had been seen wearing clothing identical to the distinctive clothing worn by the robbery.[2] The search warrant authorized law enforcement to search for, among other things, a pistol similar to one used in the robberies.

When law enforcement officers arrived at Petitioner's residence to serve the search warrant, they immediately took Petitioner into custody, read him his *Miranda* rights and transported him to the Postal Inspector's office for questioning about. Petitioner's girlfriend, Jessica Bell, was present at the residence she shared with Muhammad during the search. A pistol was found on a closet shelf. Officers determined that the gun was stolen and questioned Petitioner about it. Petitioner adamantly denied any involvement in the robbery but admitted that the gun was his. He was quite upset about being accused of the robbery and, at one point, said he did not want to talk any more. The interrogation ceased, and the postal inspector began to take information from Petitioner for a personal history form. Petitioner, however, continued to talk about substantive matters, becoming increasingly agitated about being wrongly accused of the robbery. The interviewer then asked Muhammad if he wanted to talk or not, and Muhammad said he did. Though he continued to deny any criminal involvement, Muhammad stated that he purchased the gun his "cousin" Larry Jackson. When questioned about Jackson, Muhammad could provide little information about him other than his name and said that he was not actually

---

[2] Another person was later arrested for the second post office robbery. At the time the search warrant was issued, however, the postal inspector who provided the affidavit believed that Petitioner was involved in both robberies.

2

related to Jackson. Muhammad said Jackson approached him as he was walking through Rickarby Park and offered to sell him a gun for $50. Muhammad admitted that he figured it was probably stolen.

Before trial, Muhammad's attorney, Richard Alexander,[3] filed a motion to suppress Petitioner's statement and a motion to suppress evidence obtained as a result of the search. A few days before trial, the Court held a pretrial hearing and denied the motion to suppress the statement. On the morning of trial, the Court held a hearing on the motion to suppress evidence and ruled that the evidence was admissible.[4]

Petitioner was tried on May 9, 2005 and found guilty. At trial, the government presented evidence to satisfy all the elements if 18 U.S.C. § 922(j). The gun's owner testified that it had been stolen. An agent from the Bureau of Alcohol Tobacco and Firearms testified that that it had traveled in interstate commerce. Petitioner's own statements were offered to establish that he possessed the gun. To prove that Petitioner knew or had reason to believe the gun was stolen, the government relied on Petitioner's explanation about how he obtained the gun and on his statement that he thought the gun was probably stolen. The defense called Michael Steen as its primary witness. Steen testified that the gun found in Muhammad's house belonged to him and that he had loaned it to his friend Muhammad. According to Steen, he obtained the gun in January or February of 2003 when an unknown person approached him at Rickarby Park offered to sell him a gun for $150. Steen said that he knew the gun was stolen but did not tell Muhammad that when he loaned it to him.

---

[3] Initially, Petitioner was represented by CJA-appointed attorney Lila Cleveland. Due to a breakdown in the attorney-client relationship prior to trial, Ms Cleveland was allowed to withdraw, and Mr. Alexander was appointed.
[4] In his motion to suppress, Petitioner's counsel had asserted that the search warrant affidavit contained information that Inspector Payne knew, or should have known, was false. The Court rejected that assertion. (Tr., Doc. 66, 24.)

3

On August 25, 2005, this Court sentenced Muhammad to a term of imprisonment of 21 months.[5] Mr. Alexander filed a notice of appeal on Muhammad's behalf and was allowed to withdraw. Attorney Gregory Hughes was appointed on appeal. Mr. Hughes filed an *Anders* brief and a motion to withdraw. However, the Eleventh Circuit denied the motion to withdraw and directed briefing on one issue—whether the trial court erred in denying the motion to suppress statements. In its final judgment, issued as mandate on November 30, 2006, the Eleventh Circuit held that the statements made by Muhammad were properly admitted at trial and affirmed his conviction and sentence.

**Issues Presented**

The claims raised in Petitioner's form motion do not precisely match those raised in his supporting brief, which weaves together various thoughts and ideas without clear delineation. The form § 2255 motion and brief, read together, clearly identify four claims: (1) constitutionally ineffective assistance of counsel for failing to have the search warrant declared invalid; (2) the government's reliance on false testimony to obtain a search warrant; (3) the admission of Petitioner's statement at trial and (4) selective prosecution.[6] Each of those is addressed below.

**Legal Analysis**

*Applicable Legal Standards*

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164.

---

[5] At the time of trial, Petitioner was serving a state sentence for first degree robbery based on a May 10, 2004 conviction. (PSR, Doc. 54, ¶ 10.)
[6] To the extent that Petitioner's expansive, rambling and sometimes incoherent brief touches on additional matters that might be considered claims, the Court finds such to be procedurally defaulted and/or lacking in merit.

Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. *Addonizio v. United States*, 442 U.S. 178, 185 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979).

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted). A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990). One way a petitioner may overcome a procedural default is by demonstrating that the default was due to constitutionally ineffective performance by counsel. *Cross*, 893 F.2d at 1290. To establish ineffective assistance of counsel, a petitioner "must show that his attorney's performance was deficient and that the deficiency was prejudicial." *Id*. However, "[c]onclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (quoting United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991)). Furthermore, "it is axiomatic that the failure to raise

nonmeritorious issues does not constitute ineffective assistance of counsel." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994).

An attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland 466 U.S. at 686.

> When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioners' to bear, is and is supposed to be a heavy one. And, we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial ... worked adequately. Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (internal quotations and citations omitted).

### *Issue 1: Ineffective Assistance of Counsel/Search Warrant Affidavit*

Petitioner argues that counsel rendered constitutionally ineffective assistance because he failed to "make a showing that the false statement[s] [in the search warrant affidavit] were knowingly and intentionally made, and were also made with reckless disregard for the truth." (Doc. 76 at 3.) This claim is a conclusory one which incorrectly presumes that the affidavit contains material false statements that were knowingly or recklessly made.

In *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978), the Supreme Court set a high bar for challenges to warrant-based searches:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless

6

> disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

Counsel did, in fact, move to suppress evidence on the ground that the search warrant affidavit contained false statements that were either deliberately or recklessly made. (5/9/05 Supp. Hg. Tr., Doc. 66, 5.) Counsel even managed to persuade the Court to hold a hearing. Petitioner does not clearly state how counsel's representation at the suppression hearing was objectively unreasonable, except that counsel "did not get an affidavit from anyone or any supporting evidence to void the search warrant." That statement presumes that that such evidence existed. Petitioner identifies pieces of information in the affidavit that could be (or were) disputed, but he points to no evidence that the postal inspector knew or should have known that information was false when he provided the affidavit. Counsel's failure to prove the unproveable does not amount to constitutionally ineffective assistance.

### *Issue 2: Admission of Evidence from Search*

Petition also contends that the Court's admission of evidence obtained during the search violated his constitutional rights. This claim is subsumed in the preceding ineffective assistance of counsel claim. To the extent this claim could be considered separately, it is procedurally

7

barred because Petitioner has failed to demonstrate cause and prejudice for his failure to raise it on appeal.

### Issue 3: Admission of Petitioner's Statement

Whether Petitioner's statement was taken in violation of his Fourth Amendment right to remain silent was the sole issue on appeal. The appellate court held that there was no constitutional violation. Because this claim was raised and decided on direct appeal, it cannot provide a basis for habeas relief. *See Moore,* 598 F.2d at 441.

### Issue 4: Selective Prosecution

This claim fails for two reasons. First, it is procedurally barred. Petitioner did not raise the claim on direct appeal and has failed to establish cause for or prejudice from his failure to do so. Even if procedural default did not apply, the claim fails for lack of merit. A person asserting a selective prosecution claim bears a "demanding burden" of proving by "clear evidence" that the prosecutor has selected him for prosecution for a constitutionally impermissible reason. *United States v. Smith*, 231 F.3d 800, 808 (11th Cir. 2000). The elements of a selective prosecution case are: (1) discriminatory effect, i.e., that similarly situated persons were not prosecuted and (2) discriminatory motive, meaning one that violates the equal protection clause of the United States Constitution. *United States v. Armstrong*, 517 U.S. 456, 465-66 (1996). The basis for Petitioner's selective prosecution claim is set forth in his reply brief wherein he states that from 1999-2003 prosecutors in this district substantially more indictments against felons in possession of firearms than against purchasers who made false statements on federal firearms forms. Since Petitioner falls into neither of these categories (having been convicted of possession of a stolen firearm), this information has no relevance whatsoever.

**Conclusion**

For the reasons set forth above, it is hereby **ORDERED** that the motion to vacate, set aside or correct sentence be and hereby is **DENIED**.

Rule 11 of the Rules Governing Section 2255 Proceedings requires that this Court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "A certificate of appealability may be issued only where the applicant has made a 'substantial showing of the denial of a constitutional right.'" *Hardwick v. Singletary*, 126 F.3d 1312, 1313 (11th Cir. 1997). This standard is "materially identical" to the standard governing certificates of probable cause under the former 28 U.S.C. § 2253. *Id.*; accord *Slack v. McDaniel*, 579 U.S. 473 (2000). In the context of certificates of probable cause, the Supreme Court has defined the requirement of "a substantial showing of the denial of a federal right" to mean that the applicant must raise an issue that is debatable among jurists of reason. *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983). None of the claims raised in petitioner's § 2255 meet this threshold. Accordingly, the certificate of appealability is **DENIED**.

**DONE** and **ORDERED** this the 15th day of June, 2010.

*s/Charles R. Butler, Jr.*
**Senior United States District Judge**